EL PASO & SOUTHWESTERN RAILROAD COMPANY v. JOE WELTER.

Decided January 26, 1910.

**1.—Master and Servant—Scope of Servant's Duties—Question of Fact.**

While it is a correct proposition of law that negligence of a railroad company can not be predicated on moving a train of cars without notifying an employee who is engaged in an act on and about the cars for which he was not employed, in the absence of evidence that the company knew or ought to have known of the perilous situation of the employee, the refusal of a requested charge involving said proposition is proper when to give it would involve an assumption that the employee was not in the line of his duty when injured, said fact being an issue under the pleading and evidence.

**2.—Same—Contributory Negligence—Question of Fact.**

The question of contributory negligence is one of fact, the burden of proving which is upon the defendant who alleges it as a defense, and unless

the state of the evidence is such that no fair minded man of ordinary intelligence can reach any other conclusion from it than that the party charged with it was guilty, which can very rarely be the case, such question must be determined by the jury.

**3.—Same—Assumed Risk.**

The servant never assumes the risk of his master's negligence unless he is chargeable with notice of the same and can reasonably anticipate a concomitant danger, and the burden is on the master to prove such knowledge.

**4.—Same—Danger Signal—Rule Construed.**

Rule of a railroad company requiring a blue flag by day and a blue light by night to be displayed at one or both ends of a train of cars when workmen are under or about it, held to have no application to a case wherein the foreman of a switch engine, before moving a train of cars, went under one of the cars which was marked "in bad order," to ascertain whether it could be coupled and moved.

**5.—Same—Duty to Warn Servant.**

The principle that it is not the duty of the master to warn a servant of danger unless he knows or by the exercise of ordinary care ought to know the danger to which the servant is exposed, has no application to a case where the danger arises and the injury is caused from the negligent act of the master himself or of those whose negligent acts are attributable to him.

**6.—Trial—Issues—Irrelevant Charge.**

A special charge which ignores the real issue made by the pleading and evidence and upon which the case was tried, is properly refused.

**7.—Evidence—Matter of Inducement—Leading Questions.**

It is generally permissible to ask a witness a leading question for the purpose of ascertaining whether the witness is qualified to testify about the matter in issue.

**8.—Same—Leading Question—Test.**

The generally applied test in determining whether or not a question is leading, is, does the question suggest the desired answer?

Appeal from the District Court of El Paso County. Tried below before Hon. James R. Harper.

*Patterson, Buckler & Woodson,* for appellant.

*Patterson & Wallace,* for appellee.

NEILL, ASSOCIATE JUSTICE.—This suit was brought by Joe Welter against the El Paso & Southwestern Railroad Company, the El Paso & Northeastern Railroad Company, and the El Paso Terminal Railroad Company to recover damages for personal injuries.

The plaintiff alleged, substantially, that the defendant companies were, on July 15, 1908, jointly and severally engaged in the business of operating in the city of El Paso a large number of railway tracks in their yards in said city, and employed a large number of switchmen and other employes whose business was to switch cars and make up trains in the usual course of business conducted by them; that on and prior to said date plaintiff was employed by the defendants, or at any event by the El Paso & Southwestern Railroad Company, and engaged in switching cars and making up trains in said yards under

the direct supervision of defendants, or in any event under the direct supervision of the last named defendant; that on said day he was ordered by the yard master in charge of said yards to switch a caboose and another car attached to the end of a string of cars standing on track No. 2, and after removing the caboose and other' car, to transfer the remaining cars to the yards of other railroad companies; that after receiving such order it was his duty, before moving said cars, to look them over for the purpose of ascertaining whether they were in a condition to be moved, and that in going to the rear end of the string he discovered that the coupling appliance of the rear car was out of order, and, for the purpose of finding out whether the drawhead could be used in moving it, he went under the car to examine it, and that while doing so defendant's servants negligently struck the other end of the string with other cars with such force and violence as ran them against him before he had time to escape injury therefrom, by reason of which his hand and arm were injured, etc.

The defendants' answers consisted of a general denial, and special denial of any acts of negligence, and pleas of contributory negligence and assumed risk. The plaintiff having dismissed his suit as to all the defendants except the El Paso & Southwestern Railroad Company, the case as between plaintiff and said company was tried before a jury and the trial resulted in a verdict and judgment in favor of plaintiff for the sum of $9,000.

*Conclusion of facts.*—As the first assignment of error complains that the court erred in refusing to charge the jury at defendant's request, that under the pleadings and evidence in this case their verdict must be for the defendant, and the propositions advanced thereunder involve conclusions on every essential controverted issue of fact in the case, our disposition of the assignment will be determined by our conclusions of fact upon the main issues. The propositions asserted under the assignment are as follows:

"1. Negligence of a master can not be predicated on the movement of cars without notifying a servant engaging in an act for which he was not employed, in the absence of evidence that the master knew the servant was under or about the car moved, or in the exercise of ordinary care and prudence ought to have so known.

"2. Aside from appellee's failure to use the blue flag as required by appellant's rule, the evidence was conclusive that plaintiff's injury resulted entirely from his own negligence, or at least that his own negligence proximately contributed to cause his injuries.

"3. The evidence showed that plaintiff assumed the risk, as a matter of law, of being injured as he was.

"4. Appellant having provided and promulgated a rule which, if obeyed by appellee, would have protected him from injury, should not be made to respond in damages for an injury resulting from appellee's failure to obey such rule."

They will be considered in the order presented.

1. This proposition, while good law in a case to which it is applicable, is not sound in its application to the case in hand. Its vice lies in assuming that the appellee, when injured, was "engaging in an

act for which he was not employed." This assumption involves an issue of fact made by the pleadings and evidence, which it was within the exclusive province of the jury to decide, and it would have been an invasion of a domain in which it had no right and an usurpation of authority for the court to have taken the question from the jury and have decided it, which would have been done had the requested charge been given.

2.  Laying aside for the present the question as to whether the plaintiff's failure to use the blue flag was negligence—to be considered when we come to pass upon the fourth proposition—we will first observe that the question of contributory negligence is one of fact, the burden of proving which is upon the defendant who alleged it as a defense; and that unless the state of the evidence is such that no fair-minded man of ordinary intelligence can reach any other conclusion from it than that the party charged with it was guilty of such negligence (which can very rarely be the case), such question must be determined by the jury. When, in view of this principle, the evidence is read and considered, it can not be said that it is conclusive that plaintiff's injury resulted entirely from his own negligence or that his negligence proximately contributed thereto.

3.  The servant never assumes the risk of his master's negligence, nor of such negligence as is chargeable against the master, unless he has or is chargeable with notice of such negligence and can reasonably anticipate its concomitant danger. Such negligence of the master being shown as imposes a risk upon his servant not ordinarily incident to his employment or materially adds to or enhances a risk that is, the burden rests upon the master to prove that his servant who has been injured by such negligence knew or was charged with knowledge of such negligence and could have reasonably anticipated its attendant danger. There being evidence reasonably tending to show that defendant, or its servants operating them, was negligent in the excessive force used in propelling the cars which struck the string, to which the one whose drawhead plaintiff was examining was attached, it can not be said as a matter of law that plaintiff assumed the risk of such negligence.

4.  The rule referred to in this proposition is as follows: "26. A blue flag by day and a blue light by night displayed at one or both ends of an engine, car or train, indicates that workmen are under or about it. When thus protected it must not be coupled to or moved. Workmen will display the blue signals and the same workmen are alone authorized to remove them. Other cars must not be placed on the same track so as to intercept the view of the blue signals, without first notifying the workmen."

It is apparent from the rule itself, in view of the evidence, that it has no relation or application to the kind of work plaintiff was doing when he was injured. He was not engaged as a workman on the car, but as the foreman of the switch engine in ascertaining whether the drawhead was in such condition, or could be placed in such condition and position, that it could be used in making such coupling as would enable him to move the car in obedience to the order given him by the yard foreman. It is not shown, nor is it

reasonable to suppose, that a switchman, in making such an examination, even when it becomes necessary to get beneath the end of a drawhead to do so, is required or expected to place such signals as are designated in the rule, for his protection; for this would necessarily cause such great delay in making and breaking up trains and in placing and distributing cars upon the proper tracks and sidings, as would render such service impracticable, if not impossible, without changing the entire system under which such switching is done in railroad yards. The car had already undergone such inspection, which was made by another employe, as was necessary to determine whether it was in such condition as to require repairs, and had been found to be in bad order. It was not for the purpose of making a like inspection that plaintiff was engaged in examining the drawheads, for he knew that such inspection had been made and the car marked in bad order, and that for that reason he had been ordered by the yardmaster to remove it from the track it was on to the one he was ordered to place it on; but, as has been before stated, for the purpose of ascertaining whether it could be so moved by the use of its defective drawhead.

We, therefore, overrule the assignment and all the propositions asserted under it. And in doing so, find as matters of fact: (1) That the defendant was guilty of the negligence alleged and that such negligence was the proximate cause of plaintiff's injuries; (2) that plaintiff was not guilty of any negligence proximately contributing to his injuries; (3) that his injuries were not caused by any risk assumed by him as ordinarily incident to his employment; and (4) that he did not disobey the rule of defendant above referred to.

*Conclusions of law.*—1. The special charge requested by defendant, the refusal of which is the subject of the second assignment, is not applicable to that theory of the case, arising from the pleadings and evidence, upon which it was submitted to the jury. The principle that it is not the duty of the master to warn a servant of danger unless he knows, or by the exercise of ordinary care ought to know, the danger to which the servant is exposed, has no application to a case where the danger arises and the injury is caused from the negligent act of the master himself or of those whose negligent act causing the injury is attributable or chargeable to him. The real issue upon which this case was tried was not whether the defendant knew or could have known by the exercise of ordinary care that plaintiff was exposed to the danger of being injured in the way he was; but whether defendant's employes were guilty of negligence in throwing the cars in on the west end of track No. 2 with such force or speed as to move the entire string of thirty-five or forty cars thereon, thereby injuring plaintiff, who was in the discharge of his duty in examining the coupling of the rear car of the string, which was furthest from the point of impact. To have given the requested charge would have been to ignore this issue entirely, which was the only one upon which plaintiff relied after the evidence was closed and which the court presented in its charge to the jury.

2. Special charges Nos. 7 and 8, the refusal of which is the basis of the third and fourth assignments of error, are embraced in the

tenth and twelfth paragraphs of the main charge, which states the law as clearly and as favorable to the defendant as it is enunciated in the refused special charges referred to in said assignments. Therefore, we overrule both of said assignments of error.

3.    The fifth assignment of error complains of the eighth paragraph of the court's charge, which is as follows:

"If you believe from the evidence, and a preponderance thereof, that the plaintiff was employed by defendant, the El Paso & Southwestern Railroad Company, on the 15th day of July, 1908, and that while in the line of his duties in such employment (if any) he was directed by W. E. McGraw, the yardmaster, to switch certain cars to another track; and that in order to properly switch said cars (if any) it became necessary and was a part of his duty to inspect the drawhead of one of said cars; and that in so inspecting said car (if he did) it was necessary for him, plaintiff, to get under the said car in a stooping position, as alleged, to inspect the drawhead thereof, and that he did so place himself under the said car; and you further believe and find that while plaintiff was under the car (if he was), as alleged, that the defendants' employes, in working another engine, switched eight or ten cars against the opposite end of the train of cars with unusual and unnecessary force and violence, and that because thereof the wheel of the car under which plaintiff was, caught plaintiff's hand and arm, and that he was thereby injured; and you further believe and find that such act of switching the cars (if any) was negligence upon the part of the defendants' employes, as the term negligence has been defined to you above, and that such negligence (if any) was the direct and proximate cause of the accident to plaintiff and his injury (if any), and that the plaintiff himself was not guilty of negligence and did not assume the risk, then and in that event, your verdict will be for the plaintiff.    If you do not so find, your verdict will be for the defendant."

The propositions under the assignment interpose these objections to said paragraph:    (1) That it singles out and places before the jury the question whether the cars were switched with unusual and unnecessary force and violence, thereby presenting an issue not made by the pleadings; (2) that in submitting whether or not the cars were moved with "unusual and unnecessary" force and violence, it was upon the weight of the evidence; (3) that in submitting whether or not the cars were switched with "unusual and unnecessary'" force and violence, it sought out and gave undue prominence to certain portions of the evidence; and (4) by presenting the question whether the cars were moved with "unusual and unnecessary" force and violence, it had a tendency to lead the jury to believe that, in the opinion of the court, the moving of the cars with "unusual and unnecessary" force and violence would constitute negligence.

The paragraph is not obnoxious to any of the objections.    That it is not to the first is obvious from these allegations in plaintiff's petition:

"That while they were engaged in moving the car and placing other cars back on track No. 2, they made what is known as a running switch, or threw a string of cars back in on track No. 2 at a very

rapid and dangerous rate of speed, and with great force and violence, and with sufficient force and violence to move all the cars, about forty-five in number. That the employes were guilty of negligence in switching the cars and throwing the same back on track No. 2 at such a rate of speed, and with such force and violence as to move all the other cars then located on track No. 2. That if the employes in charge of said other engine had exercised due care in switching or running said cars in on track No. 2 in a careful and proper manner and at a proper speed, the force of contact of said two strings of cars would not have been of sufficient force to move said string of cars on which plaintiff was working." That it is not open to any other of the objections is apparent from the paragraph itself, when read and considered in the light of the pleadings and the evidence.

4. The sixth assignment complains that the eighth and ninth paragraphs of the charge were misleading in that their tendency was to lead the jury to believe that if the cars were switched with "unusual" or "unnecessary" force they should find the defendant guilty of negligence. We have already, in disposing of the fifth assignment, copied the eighth paragraph of the charge. Here is the ninth: "If you believe that the employes of the defendant company did not switch the eight or ten cars with unusual and unnecessary force and violence against the car under which plaintiff was located, and those against it, then there was no negligence, and your verdict will be for the defendant."

We can perceive no such tendency as is urged against the charge; for each paragraph, as well as both considered together, clearly leaves the question of negligence *vel non* to the determination of the jury, without intimating in the least any opinion of the court upon it, or how it should be decided.

5. We overrule the seventh and eighth assignments. Neither of the questions complained of by them suggested the desired answer to the witness, which is the generally applied test in determining whether a question is leading. Each question was asked for the purpose of ascertaining whether the witness was qualified to testify about what was claimed to be a prevailing custom in the yards where plaintiff was at work in regard to moving and switching cars, and it can hardly be perceived how the witness could have been lead up to the point of inquiry by a question framed in any other form. It is generally permissible to ask a witness a leading question for such purpose. Therefore, if either of the questions should be regarded as leading, it was permissible and not obnoxious to the principle upon which the rule inhibiting leading questions is founded.

6. There was no error in the court's overruling the defendant's motion for a new trial upon the ground embodied in the ninth assignment of error. Rule 26 therein referred to was evidently not intended to apply to switchmen or other employes who, for their own safety and the safety of others engaged in the same business, were required to examine the cars when switching in defendant's yards, but was intended to be applied for the protection of car inspectors and car repairers while engaged in the duty of their employment.

7. Special charge No. 12 was properly refused, because substantially embraced in the main charge. What we have held in disposing of the foregoing assignments requires that all others not specifically mentioned be overruled.

There is no error in the judgment and it is affirmed.

*Affirmed.*

Writ of error refused.